## Joseph H. View, Appellee, v. The Metropolitan West Side Elevated Railway Company, Appellant.

### Gen. No. 15,973.

1. CONTRIBUTORY NEGLIGENCE—*when person injured by falling into basement not guilty of.* Held, that the plaintiff in this case, who was injured while endeavoring to reach a toilet maintained by the defendant, was not guilty of contributory negligence, it appearing that the arrangement of doors was such that he might readily mistake the door leading into the basement for that leading into the toilet, and this notwithstanding that there was sufficient light to have enabled him to have avoided the injury if he had been anticipating danger.

2. CONTRIBUTORY NEGLIGENCE—*what does not render person guilty of.* The law does not charge one with anticipating dangerous and negligent conditions, but a person may assume that others have done their duty to give proper warnings of hidden dangers.

3. NEGLIGENCE—*what arrangement of doors constitutes.* Held, under the evidence, that the arrangement of a door leading to a basement, in close proximity to another door leading to a toilet maintained by the defendant for the use of those properly upon its premises, was such, together with the fact that no proper designation of such doors had been made, as to render one unacquainted with the prem-

ises who is injured by falling into a basement, entitled to recover.

4. NEGLIGENCE—*obligation to guard stairways, etc.*   One who invites the public to come and patronize his business has no right to permit the existence of dangerous stairways, elevator shafts, or other dangerous openings, unless suitably guarded so that slight mistakes may not prove disastrous.

Action in case for personal injuries.   Appeal from the Circuit Court of Cook county; the HON. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909.   Affirmed.   Opinion filed November 15, 1911.

**Statement by the Court.**   This appeal is prosecuted by The Metropolitan West Side Elevated Railway Company to reverse a judgment rendered against it in the Circuit Court of Cook county, in favor of appellee for $2,500 for personal injuries.

About noon on the 8th day of August, 1904, appellee, as a passenger from one of appellant's elevated trains, was passing out of appellant's Canal street station, when he undertook to make use of the toilet room maintained by appellant on the ground floor of that station. The station itself was on the west side of Canal street and had a rear passageway, or entrance, twelve feet in length by six feet in width, leading from the waiting room to Clinton street, from the north side of which passageway a door opened into the toilet room. Immediately above the station there were four tracks and two platforms for the reception and discharge of passengers, each having roofs overhead.   The toilet room in question was about three feet east of the west end of the passageway in question, but between the door to the toilet room and the west end of the passageway there was another door opening onto a steep stairway leading to the basement.   The two doors were entirely similar in appearance, except that the toilet room door had the word "men" on it, and a door check or spring near its top, the knobs of the two doors being only about twelve inches apart.   From the waiting

room the passageway is entered through two swinging doors, the upper panels of which are of clear glass each 19x33 inches. At the other end of the hallway two swinging doors, the upper panels of which are also of clear glass of the same dimensions, lead to the rear of the station. Above these outside doors is a transom of clear glass 54x12 inches. These doors open upon an open area a hundred feet or more wide, extending west clear through to Clinton street, free of obstructions to light except for the elevated railway structure overhead. Two incandescent lamps in the ceiling at about the center of the hallway give additional light. Appellee, who had used the toilet room a few times before the time in question, opened the basement door by mistake, and when he stepped inside fell into the basement and was severely and permanently injured.

The declaration charged, in substance, that by reason of the similarity and the proximity of said door opening into said basement to said door opening into said toilet room, persons desiring to enter said toilet room were liable to mistake said door opening into said basement for the one opening into said toilet, and to fall into said basement; and that appellant was guilty of negligence in permitting said basement door to so remain unfastened and unlocked, and by reason thereof appellee was injured.

ADDISON L. GARDNER, for appellant; W. W. GURLEY, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

Only two grounds are urged by appellant in its brief and argument for the reversal of this judgment, (1) that appellee was guilty of contributory negligence, and (2) that the defendant was not guilty of the negligence charged.

*First.* No one saw appellee fall into the basement. He gave the only testimony explaining how he came to be injured, in substance as follows:

"On the day of the accident I boarded the Metropolitan train at Laflin street station. I paid my fare and rode to Canal street. I got off the train, came down the stairs and walked through the room, the little room in the hallway, and I was looking for the toilet, that is, I passed out as far as the door and I opened the door and I fell down in. I didn't notice whether I opened the first or the second door that I came to. This was the only door I noticed. I didn't see any other door at all. It was around twelve o'clock about, I have no recollection of the kind of day. I did not know at all at the time that there was any opening there except to the toilet room. When I opened that door, I went to step in, and I thought I saw the floor, and I went to step in and missed my hold on the door knob, and fell down, and that is the last I knew of it. I don't know what I fell on; I know it was down stairs. I couldn't tell you where I struck. I didn't know anything until I got home. I don't remember going out of the basement. I don't know how I got out of the basement. As I opened this door just before I fell, it was dark in that room. There was a light there and I thought I could see the floor. It looked like a floor. I saw just what I thought was the floor. I knew where the toilet was. I opened the door and went to step in and as I stepped in I let go of the door knob, and I fell. I never noticed which way the door opened, in or out. I had been there probably three or four times in four years. I didn't have to ask anybody where to go that morning. I didn't inquire where the water closet was. The first time I ever went in this door, I did not see the word 'men' on the door. I saw a man coming out of that door, that is before I fell, probably two months before. The man was coming out of the toilet door and as he came out I stepped in. It was the first time I went into that closet."

158     APPELLATE COURTS OF ILLINOIS.

View v. The Met. W. S. Elev. R'y Co., 166 Ill. App. 154.

· The other evidence in this case shows that there was a window in the west wall of the building just above the level of the door and above the stairway that gave light to the stairway and basement, and that there was another such window on the north side of the basement. The evidence also shows that there was a sixteen candle power electric light that usually burned in the basement, but the evidence does not disclose as to whether or not it was burning at the time of appellee's injury. The basement door was hung flush with the south side of the door frame and opened out towards the hall. The toilet door was set in about flush with the door facings on the inside and opened into the toilet. The basement in question was used by the lunch and the cigar counters in that station for storing articles, washing and hanging table linen, and was the headquarters for the janitor of the station who stored his tools therein. The lunch and cigar rooms were rented to the proprietors thereof by appellant, and everyone who used the basement appears to have had a key to the door. The floor of this station was about on a level with the ground on the outside, and there was no other business except as above named, and the railroad business, carried on in this building. It was a passenger station, and there was nothing about the business conducted in this one story building, or about the surroundings, that suggested the idea that there was a basement, or any such place in or under the building. As aptly suggested by appellee's counsel, this injury occurred on the inside of a passenger station, "a place where a person ordinarily has no reason to expect danger, or to anticipate that a very high degree of watchfulness is required on his part to discover and avoid danger." The appearances were that it was a place of rest and refreshment for passengers while waiting for, or retiring, from trains, and without hidden dangers of any character. There was no sign

or designation of any kind on the basement door to warn or acquaint the public with the fact that there was a basement there, and the only way to learn such fact was either by opening the basement door or specially inquiring as to what use was made of the door. It is true that the toilet door had on it in good sized letters the word "Men." This was a sufficient designation for all ordinary persons to understand that behind that door there was a toilet for men; but the two doors being in such close proximity, with the knobs only ten or twelve inches apart, it was not entirely unreasonable for one looking at the doors so simliar in appearance to conclude that they were both doors to the toilet. The very place they occupied and the general appearances would lend weight to this conclusion. The appearance, positions and surroundings of the doors were such also as to make it very probable that persons might by mistake open the wrong door. As appellee had no knowledge of it at all, there is little ground for saying that he ought to have been on the lookout for such a danger or any danger at all in that part of the building.

The law does not charge one with anticipating dangerous and negligent conditions, but he may assume that others have done their duty to give proper warnings of hidden dangers. C. C. Ry. Co. v. Fennimore, 199 Ill. 9.

Appellant argues that there was plenty of light for appellee to see that it was a basement when he opened the door and not a toilet, had he stopped to look; that appellee knew where the toilet was and that there was no excuse for him plunging into the stairway without looking. This is one of the instances in which knowledge of where the toilet was did not aid him in apprehending the danger. If he had had no knowledge at all as to what either door led to, he would have been very much less excusable for putting himself hastily through this door. The similarity and position of the

doors and his knowledge that there was a toilet there, and his lack of knowledge of the existence of the basement or any other danger, are the exact apparent reasons why this injury did so occur. Had he been entirely uninformed as to what either door led to, and had the stairway been dark, these facts would furnish strong reasons and incentives for caution and investigation before entering into the door. As is said, in substance, in several cases cited by appellant: "There is no presumption that a person can walk through any door he comes to in a *strange* house without taking proper precautionary measures." Van Ness v. Murphy, 107 N. Y. Supplement, 99; Hilsenbeck v. Guhring, 131 N. Y. (86 Sickels), 674.

In the last case cited, the court said: "He says it was dark, and after he got hold of the door in question, it was so dark he could not see into the space in front of him. He had never been there before, and he had no information which might mislead him, or cause him to think there was but one and that the door into the closet. He knew nothing about it, and in that state of ignorance he opens a door which he thought was the one leading to the closet, but, it being dark, he could not be certain, and notwithstanding the darkness he walks ahead and, while supposing himself in the closet, steps to the head of the stairway and falls down the cellar stairs. In such case and in the darkness he should not have proceeded in a perfectly strange place without a light, or in some way taking precautions which would have enabled him to proceed in safety."

In the case at bar, appellee knew where the toilet was, and had no knowledge or notice of danger at all, actual or constructive, had no occasion to look for a name on the door, knew nothing of the existence of two doors, and, relying on his knowledge, went hastily through the door and fell down the steps. This presents quite a different question to the one in the foregoing cases, in which the injuries were shown to have occurred in

apartment houses·or hotels wherein cellars and cellar doors and elevator shafts may be expected to be found. "The same precautionary means requisite to relieve a party from the charge of negligence when he approaches known places of danger, or places where danger may be apprehended, may not be required of him when he has no occasion to suppose that danger may be encountered." McRickard v. Flint, 114 N. Y., 222. It is true, perhaps, that the evidence shows that there was sufficient light for appellee to see the stairway, and protect himself against it, had he stopped and taken a survey of it before stepping into it. We do not think that ordinarily prudent persons at all times or generally would stop and look for danger before entering a toilet with which they supposed themselves to be fairly well acquainted. The toilet door in question opened into the toilet in a manner to conceal all the fixtures therein from view until the door was passed. The stairway was steep and the steps only six inches wide while the risers were eight inches high, and the first step down was right at the door step. To enter in haste without actual knowledge of the conditions meant almost certain injury to the one so entering.

*Second.* All that we have said upon the first question is necessarily an argument more or less upon the question of appellant's negligence, and we so refer to it here. The authorities are numerous to the effect that no one who invites the public to come and patronize his business has a right to permit the existence of dangerous stairways, elevator shafts, or other dangerous openings, unless suitably guarded so that slight mistake may not prove disastrous. What is said in Hayward v. Merrill, 94 Ill. 349, in an elevator case, applies with equal force here, to-wit: "Had plaintiff been intent upon observing the number on the room door he might have discovered the room he wished to enter, but by the merest accident he opened the next door, and this slight inattention was the cause of his severe injuries.

The opening ought to have been better protected than it was, and the omission to do so, under the circumstances proven, may well be attributed to the defendant as gross negligence.'' In that case the elevator door and plaintiff's room door were both numbered, and the plaintiff had occupied the room before and was somewhat familiar with it, and knew the number of the room he sought at the time he fell. But the doors were very similar, very close together, about two and one-half feet apart, and had no other marks to designate them and both were unlocked. The elevator door in that case was hung on the outside of the door jambs and opened outward, while the door to plaintiff's room was set in and opened inward. The basement door of appellant not being marked in any way, so as to disclose the danger behind it, it was very necessary to keep it locked or otherwise secured, so that it could not be easily opened by patrons of the place, and we think the jury were warranted under the evidence in finding the appellant guilty of negligence in failing to so lock or secure it. The question of the contributory negligence of appellee was also a question of fact for the jury under the evidence, and we do not think that finding is manifestly against the weight of the evidence.

The judgment of the lower court is, therefore, affirmed.

*Judgment affirmed.*