LUELLA NEWHOUSE v. ST. LOUIS BUILDING & EQUIPMENT COMPANY, Appellant.—33 S. W. (2d) 932.

Division Two, December 20, 1930.

1048

*Polk, Williams & Campbell* for appellant.

*Douglas W. Robert* for respondent.

COOLEY, C.—Plaintiff, respondent here, obtained a verdict against defendant for $15,000 in the Circuit Court of the City of St. Louis for personal injuries. The court required her to remit $5,000 of the verdict or submit to a new trial. She made the *remittitur*, and judgment was entered in her favor for $10,000, from which judgment defendant appeals.

Plaintiff was in the employ of defendant as a stenographer in defendant's offices in St. Louis. These offices consisted of several rooms, one of which was used by the president of defendant company and by Mr. J. B. Gander, its vice-president. In this room plaintiff was injured by stumbling and falling over the foot of an office chair, breaking her wrist. There were in the room three flat-topped desks. One, Mr. Gander's desk, was in the southwest corner of the room, placed with one side against the west wall and one side against the south wall. The president's desk was similarly placed in the northwest corner. Between these two was the other desk with one side against the west wall. The president and vice-president both occasionally used the latter desk, and upon a window sill to the west of it was kept a basket into which letters to be mailed and papers to be filed were placed. The central desk was thus north of Mr. Gander's desk, and the evidence indicates there was a space of about forty inches between them. Mr. Gander's office chair, over the foot of which plaintiff stumbled, was at the north side of his desk, and therefore between it and the central desk.

Plaintiff's usual working place was in another room, but it was part of her duties to examine the basket above mentioned from time to time and attend to the mailing of letters and filing of papers left there. On the day of her injury she went to the basket in the performance of this duty, passing between Gander's desk and the one to the north of it. It was about five o'clock on a May afternoon and the light in the office was good. Plaintiff saw no one in that room when she entered and went to the basket. Mr. Gander being then in an adjoining room discussing a business matter with a Mr. Davenport. After spending four or five minutes examining the papers in the

basket, plaintiff turned to retrace her steps, stumbled over the foot of the office chair and fell, receiving the injury for which she sues. Her contention is that while she was absorbed in her work at the mail basket, Gander entered the room and in reaching for some papers on his desk and unknown to her, pulled his chair out from his desk and placed it in the passageway between his desk and the one north of it so that when she turned from the basket she was bound to fall over the chair. Defendant denies that Gander moved the chair, and further contends that if he did such act did not constitute negligence. Since there is a sharp controversy as to the sufficiency of the evidence to make a case for plaintiff it will be necessary to set out with some detail that part of it bearing upon the issue of liability.

Plaintiff testified on direct examination that in going to the basket she passed between Gander's desk and the one north of it; that his office chair was then in front (north) of his desk, "right up to his desk," with the back of the chair to the north; that "there was plenty of space to walk through there without watching;" that while she was facing west at the window she heard someone enter the room (through a door east of Gander's desk) and, turning her head, saw that it was Mr. Gander; that she did not see anybody else in the room. Her testimony proceeds thus:

"Q. After you picked up your papers what did you do? A. I turned to go back into my office.

"Q. Then what happened? A. I stumbled over the foot of the big chair.

"Q. Where was the chair then? A. It was in my way.

"Q. I mean in relation to the passageway? A. It didn't give me room to pass.

"Mr. Robert: Q. That is not the question—was it still against the desk? A. No, sir; it was not.

"Q. Where was it then? A. It was in my way.

"Q. Was it in the path? A. It was.

"Q. In what direction was the back of the chair? A. *The back of the chair* was north.

"Q. That is, away from you? A. *On the right of me as I passed to go east.*

"Q. When you went into the passage, you say the chair was up against Mr. Gander's desk, to the south? A. Yes, sir.

"Q. And the back was to the north? A. Yes, sir.

"Q. And when you got back from the passage—first, I will ask you how many steps you took before you struck that chair? A. Oh, I turned right around and struck it.

"Q. That close to you? A. Yes, sir; it was right in the way.

"Q. When you struck it, did you fall? A. When I struck it, I threw this hand up to catch hold of something. There was nothing but the flat-top desk to catch hold of. I couldn't catch hold of any-

thing there, and I threw my hand out to protect myself like this (illustrating). I fell and took the roller chair with me.

"Q. You turned and what part of you struck the chair first. A. My foot.

"Q. Struck the bottom of the chair? A. Yes, sir.

"Q. Could you see, as you fell, in which direction the back of the chair was at the time you struck it? A. I took hold of the back of it.

"Q. Was the back toward you then? A. It was.

"Q. Just tell in which direction the back of the chair was when you hit it? A. *The back of the chair was to the north.*

"Q. It was to the north when you went in? A. It was."

Further along in her direct examination she testified that she did not see the chair before she struck it; that she did not see Mr. Gander pull the chair out from his desk; that she did not know before she stumbled over it that it had been pulled out; that she saw no one in the room except Mr. Gander; that she did not start to rush away from the basket, but moved in a leisurely way as she was accustomed to do.

On cross-examination she was asked if she had not testified in a deposition that she had turned from the basket and "rushed right out," to which she replied that she did not remember. Then followed these questions and answers:

"Q. Is it true that 'just as I turned I rushed out?' A. It wasn't exactly rushed. I was in a hurry of course.

"Q. Is it true you turned rapidly and started to rush out of the room? A. I don't think it was rushing."

Further, on cross-examination, she testified that the chair in question was a swivel chair, "a big easy office chair," which usually stood between Gander's desk and the desk north of it; that she had previously seen it pulled out from the desk.

"Q. How many steps did you take before you stumbled against this chair? A. I stumbled against it at once.

"Q. Do you mean you didn't take any steps? A. *I don't know. It was done so quickly. I just turned and I stumbled* . . .

"Q. You didn't take any steps? A. *I don't know whether I took any steps, I turned and stumbled.*"

Proceeding, she testified that she struck against the foot of the chair with her right foot and in falling caught the top of the chair with her right hand, taking the chair down with her as she fell.

"Q. When you went in there on this occasion and up to that window, did you notice particularly the position this chair was in? A. I know there was plenty of room to go in. The chair was up against the desk.

"Q. Did you notice that particularly at the time? A. *No.*

"Q. Did you give it any special observation? A. *No; nothing special but, had it been in my way, I would have noticed it.*

"Q. Hadn't you ever moved the chair out of your way? A. At any time?

"Q. Yes. A. Presume I had, but I didn't that day.

"Q. What I am trying to get at is—I don't want to embarrass you—I want to get at if you noticed the particular location of the chair when you went in? A. No, sir; the only thing I noticed it wasn't in the way; it was against the desk.

"Q. *You did notice that?* A. *I know I couldn't go in there if it was in the way.*

"Q. You could have pushed it away? A. I didn't push it over, going in.

"Q. But you had pushed the chair over on other occasions? A. Possibly, I did.

"Q. When you went in there, you had your mind on these papers you were going to get, did you not? A. I did.

"Q. You were not thinking especially about the position of the chair? A. I wasn't thinking about the position of the chair especially.

"Q. But you had your mind on the papers? A. Yes, sir; I was going in to get the papers."

She said further that while she was sorting the papers she heard a noise and turning her head saw Mr. Gander coming into the office, to his desk; he was right at his desk.

"Q. At which entrance to his desk? A. *The east side.*

"Q. He came to the east end of his desk? A. *He came in this doorway like that* (illustrating), *that is where I saw him. I didn't look any further.*

"Q. Did you see what he did? A. I know he reached across to get some papers that I had placed in the corner.

"Q. Where was he standing when he reached? A. He was standing right by his desk.

"Q. Was he standing by the end of his desk? A. He couldn't reach those papers from there."

Continuing in answer to questions: "He had told me earlier in the day to put some papers in the far corner of his desk and I put them there. Those are the papers he came in for. He reached for those papers. Those were the only papers there for him.

"Q. You didn't see him touch the chair? A. *No, I did not. I went about picking up my papers.*

"Q. You never noticed him move that chair? A. *I did not.*"

(Italics in quoted testimony ours.)

Mr. Gander, called by defendant, testified that he did not move the chair and was not in the room until after plaintiff fell; that he and Mr. Davenport heard the noise of plaintiff's fall and both went to her assistance. Mr. Davenport, testifying by deposition, corroborated Gander. At the close of plaintiff's evidence and again at the close

of all the evidence defendant asked an instruction in the nature of a demurrer, both of which were refused.

We are of the opinion that the demurrer to the evidence should have been sustained. Plaintiff's case rests upon the plea that her injury was caused by defendant's negligence through the act of its vice-president in negligently pulling out the chair from beside his desk where it was when she went to the basket and "placing it in the pathway of plaintiff without her knowledge," where she "was bound to fall over the same on turning to return to her desk." If Gander did not move the chair as alleged after plaintiff had passed through the passageway going to the basket, or if he did so and such act cannot be attributed to him as negligence, plaintiff has no case under her pleading.

Plaintiff was the only witness who testified as to how the accident happened. We have set out her testimony on that point. She testified on direct examination, it is true, that when she went through the passageway to the basket the chair was "up against the desk" and that when she turned to go out it had been moved. But taking her testimony as a whole it is plain that that was but her conclusion, based upon the fact that she did not notice the chair as she went in and would have noticed it had it been in her way. She expressly stated that she did not notice it as she went in "but, had it been in my way I would have noticed it." Asked if she had noticed that it was then against the desk, she answered: "I know I couldn't go in there if it was in the way." So that the testimony that the chair was up against the desk when she went to the basket only amounts to this, that there was room for her to pass between it and the desk north of it. It is by no means clear from her testimony that there was not room for her to pass between the chair and the desk north of it when she turned to go out if she had been paying attention. She did not attempt to give the distance or space between chair and desk at that time. The chair still stood with its back to the north, as when she went in, and when she turned to go out the back of the chair was to her right, "on the right of me as I passed to go east." It was her right foot which came in contact with the foot of the chair. She did not see Gander touch the chair or notice him move it, yet if he did so he must then have been very close to her, so close that if he moved the chair in an effort to reach papers on the far corner of his desk, as she implies, it would seem that that action would have been noticed by her, as well as his reaching for the papers. Indeed, that he reached for the papers at all is evidently also a conclusion drawn from the fact that she had left papers on the desk for him. She did not testify that she *saw* him reach for the papers and, as suggested above, if she did see him do so and he had to move the chair to reach them, she must have noticed him move the chair. She did not testify to seeing or noticing

Gander at the north side of his desk or near enough to the chair to have moved it. The only time and place she saw him was when, as she testified, he came into the room and was east of his desk. She testified that he could not have reached the papers from the east side of the desk, but that again is a conclusion. The dimensions of the desk are not given nor the length of Mr. Gander's "reach" if he leaned over the desk.

Plaintiff's deposition had been taken and in it she had testified that she turned her head as Mr. Gander came up and *saw* him reach to get a paper and that "he picked up the paper and turned and went out into the office to the south," and she saw him do nothing else. According to that testimony Gander did not move or touch the chair. But conceding that such testimony in her deposition is not conclusive upon plaintiff (Gibbons v. Wells, 293 S. W. 89, 91; Davidson v. St. Louis-S. F. Railroad Co., 301 Mo. 79, 256 S. W. 169) and giving her the benefit of her testimony on this trial without considering contradictions in her deposition and on a former trial, it remains that a finding that the chair had been pulled out from the desk and placed in plaintiff's pathway must rest largely if not wholly upon plaintiff's conclusions and upon conjecture. While plaintiff on direct examination said that the chair was "in my way" and "didn't give me room to pass," she further testified that it was to her right as she started to go out and there are no facts testified to from which it appears that there was not space enough for her to pass between it and the desk north of it as she had done going in, had she been paying attention. She admits that she started out hurriedly, not thinking of or noticing the position of the chair until she stumbled over its foot. It seems much more probable, in view of all of plaintiff's evidence, that she stumbled over the foot of the chair simply because in her absorption she had failed to note its position than that its position had been changed. And, if it be permissible to infer that the chair had been moved it must then further be inferred that Mr. Gander moved it. No one saw him move it nor in a position to do so. The fact that he did would have to be inferred from the fact (if a fact) that the chair was moved and that plaintiff saw him in the room and saw no one else there. We think it at least doubtful whether plaintiff's evidence is sufficient to sustain a finding that Gander moved the chair.

But if it be conceded that plaintiff makes a submissible case on the question above discussed, her case fails in another respect. Even if Gander did move the chair his act in so doing cannot be characterized as negligence unless as a reasonably prudent man he should have anticipated that injury might thereby result to plaintiff. In American Brewing Assn. v. Talbot, 141 Mo. 674, 684, 42 S. W. 679, the court quotes approvingly from Ray on Negligence of Imposed Duties, pages 133, 134, as follows:

" 'The proper inquiry is not whether the accident might have been avoided if the one charged with negligence had anticipated its occurrence, but whether, taking the circumstances as they then existed, he was negligent in failing to anticipate and provide against the occurrence. The duty imposed does not require the use of every possible precaution to avoid injury to individuals, nor of any particular means which it may appear, after the accident, would have avoided it. The requirement is only to use reasonable precautions to prevent accidents as would have been adopted by prudent persons prior to the accident . . . The prudence and propriety of men's doings are not judged by the event, but by the circumstances under which **they act.** If they act with reasonable prudence and good judgment they are not to be made responsible because the event from causes which could not be foreseen nor reasonably anticipated had disappointed their expectations.' "

The court also quotes from Webb's Pollock on Torts (Enlarged Am Ed.), pages 45, 46, in which the rule is similarly stated and wherein it is said that if in a particular case (not within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should have foreseen as likely to happen, there is no wrong and no liability. [See also Cluett v. Union Elec. L. & P. Co. (Mo. App.), 205 S. W. 72, and cases cited; Ibid (Mo.), 220 S. W. 865, and cases; Ward v. Ely-Walker Dry Goods Bldg. Co. et al., 248 Mo. 348, 366, 154 S. W. 478; Zasemowich v. American Mfg. Co., 213 S. W. 799, 803.]

It is obvious from plaintiff's testimony that if the chair was moved at all it was moved very slightly. It is not claimed that it was pushed against her so that she stumbled over it in turning around, before she could have seen it. While she said she did not know how many steps she had taken, if any, she had at least started to walk through the passageway when she stumbled. The chair had rollers and moved freely and she could easily have moved it aside if in her way. She was thoroughly familiar with the arrangement of desks, chair and mail basket, used the passageway several times a day and had frequently seen the chair pulled out from the desk. If Mr. Gander moved the chair at all he must, according to plaintiff's testimony, have done so in reaching across his desk for papers thereon. In these circumstances, assuming that in reaching for the papers Gander had moved the chair slightly, can it be said that as a reasonably prudent man he should have anticipated that plaintiff might be so absorbed in her own thoughts or so unobservant as to fail to notice its position as she started out? We think not. His conduct, as to whether negligent or not, must be judged by the standard of ordinarily prudent men in like circumstances. How many business men, working in their offices and about their desks, take thought of the position in which they leave their office chairs with respect to possible consequences to em-

ployees or others who may be working in the office, even though in close proximity? Circumstances might be imagined in which the placing of a chair in the pathway of a person would be actionable negligence but in our opinion this case does not present such circumstances.

Plaintiff's accident was unfortunate but in our judgment it was not due to negligence of defendant and we may not, through sympathy, hold defendant liable. This conclusion renders it unnecessary to discuss other grounds of error alleged. The judgment of the trial court is reversed. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* concurs in result.