THE STATE OF MISSOURI at the Relation of ELLIOTT'S DEPARTMENT STORE COMPANY, a Corporation, Relator, v. GEORGE F. HAID, WILLIAM DEE BECKER and SIMON G. NIPPER, Judges of the St. Louis Court of Appeals.—51 S. W. (2d) 1015.

Division Two, July 1, 1932.

*Allen, Moser & Marsalek* for relator.

960

*George W. Wellman* and *Anthony Hochdoerfer* for respondents.

COOLEY, C.—*Certiorari* to the St. Louis Court of Appeals. One Emma Essenpreiss, whom we shall herein refer to as plaintiff, brought suit in the Circuit Court of the City of St. Louis against Elliott's Department Store Company, defendant, to recover damages for personal injuries sustained by falling down a stairway in said company's store. She recovered judgment for $5,000 from which defendant, relator here, appealed to the St. Louis Court of Appeals where the judgment was affirmed. Relator brings this proceeding to quash the opinion and judgment of the Court of Appeals because of alleged conflict of that opinion with certain decisions of this court, the claimed conflict being in the holding by respondents (1) that upon the facts shown plaintiff made a submissible case as to negligence on the part of the defendant and, (2) that the plaintiff's alleged contributory negligence was a question for the jury. In this proceeding the only question for our determination is whether or not respondents' opinion conflicts with prior decisions of this court on the same or similar facts and in determining that question we take the facts as stated in respondents' opinion, as follows:

"The first floor of defendant's store consisted of a large room without partitions. There was a basement underneath this floor, and the stairway down which plaintiff fell ran from the first floor to the basement. It extended east and west, parallel with, and about eighteen inches from the south wall of the store. It was four or five feet wide. The entrance to the stairway was at the west end, so that a person in descending the stairway would be walking from west to east. There was a railing on the east and north sides of the stairway opening. The railing on the north side extended to the head of the stairway. A number of display cases stood against the south wall and occupied the eighteen inches of space between the wall and the south side of the stairway opening. These cases were six or seven feet high, with their bases at the floor level. They extended beyond the stairway, both east and west. Parallel with, and immediately north of the stairway, and against the north railing, there stood a table, twelve feet long and two and one-half feet wide, on which merchandise, consisting of some sort of wearing apparel, was displayed. The west end of this table was flush with the head of the stairway and the railing. A short distance north of, and parallel to this table, was another table on which similar merchandise was displayed. The space between the two formed an aisle through which the customers walked. West of the stairway entrance, at a distance of a few feet, there was another table, with merchandise on it, extending north and south.

"Plaintiff testified that on the occasion in question she and her sister entered the store at the Washington Avenue entrance; that they walked south, then turned to the right and walked west along the aisle between the two tables above mentioned; that she was looking at the merchandise displayed on the tables; that while walking east in the aisle she saw the display cases against the south wall; that she stopped and examined the clothing on the table; that as she stood at the table she could not see the bottom of the show cases on the south wall; that her purpose in going to the store was to buy a dress; that there was no sign or warning of any kind of the existence of the stairway; that she did not see the stairway before she fell, and never saw anyone to call her attention to it; that she had never been in the store prior to this time; that the table immediately north of the stairway was about the usual height of tables in stores; that the clothing piled on the table extended up to about the height of her breast; that she looked over the top of the clothing so as to see the display cases against the south wall, but that she could not see the stairway; that there was an open space to the south side of the table, between it and the display cases that were over against the south wall; that there was nothing between the display cases and the table but the stairway; that the west end of the table on the north side of

the stairway was about even with the head of the steps; that she walked westwardly in the aisle north of the table and turned to the left; that when she stood at the table in the aisle examining the goods on the table which stood against the north railing of the stairway she could see the display cases against the south wall, but could not see the bottom of them, or look down into the space immediately north of them; that she walked west in the aisle examining the goods on the table, and then turned to the left, which was to the south; that as she walked south toward the display cases she stepped off and fell down the stairway; that shortly after she turned south she fell down the stairway; that she just stepped aside and stepped right off and fell down the steps; that her attention was attracted to a dress that was hanging in a display case at the south wall; that just immediately before she fell she remarked to her sister, 'Oh, look, here is the dress; look at this dress;' that just as she said that she found that she had stepped down; that she tried to catch herself, but could not, and fell down the steps; that she supposed she must have stepped slightly to the east when she stepped down; that there was sufficient light there to see the stairway if she had looked toward the floor; that she walked past the end of the table, close to it; that when she got to the table she said to her sister, 'Look at that dress,' and then made a step and fell down the stairway; that with her eyes on the display cases she continued to walk toward them after turning at the end of the table until she stepped into the stairway.

''Louise Essenpreiss, plaintiff's sister, testified:

'' 'There was a table about two and one-half feet high immediately north of the stairway and adjoining it. The table had clothing piled on it, sweaters and shirts, and something like that. The clothing was piled two and one-half feet high. As I walked westwardly along the side of this table I was examining the tables on both sides of me, following my sister, who was in the lead. I don't think I could look over this table with the clothing piled on it and see the bottom of the display cases on the other side as I walked past the table. There was no sign or warning of any kind posted indicating that the stairway was located there. I saw my sister fall down the stairs. I was maybe about three feet behind her. She was walking westwardly alongside of the table, which was immediately north of the stairway, and when she came to the end of the table she said, 'Oh, look at that dress,' and then she fell down the steps. When she reached the end of the table she turned to the left. She wanted to buy a dress. There were some dresses in the display cases. The first thing I knew my sister said, 'Oh, look at that dress,' and just as she said it she stepped off with her left foot sideways and fell down. She was just walking around the end of the table right alongside of it. She just stepped over a little further with her left foot and fell down the stairway.

After she got past the end of the table she walked over to where the stairway was and then stepped off into the stairway. After she made the turn to the left I suppose she took two steps to get over to the stairway. She stepped off at the north end of the west entrance to the stairway. She didn't have to angle much to the east in order to get into the stairway. She walked practically straight along the end of the table and with her left foot she stepped off the stairway. The table extended up to the entrance of the stairway. She walked right close to the end of the table after she made the turn.'

"The evidence for the defendant showed that above the entrance to the stairway there was a sign suspended from the ceiling, marked 'Basement,' with an arrow on it pointing to the stairway. The plaintiff's evidence shows, however, that there was no such sign there. There is no charge or contention that the entrance was insufficiently lighted."

Discussing the evidence and whether or not a demurrer thereto should have been sustained, respondents in their opinion said:

"Defendant, in support of its contention that the instruction in the nature of a demurrer to the evidence should have been given, says that the maintenance in a mercantile establishment of an ordinary stairway is not negligence where there is no deficiency in the light about the entrance. We find no fault with this statement of the law; but the stairway here in question, masked as it was with display cases and tables, could hardly be said to be an ordinary stairway. The arrangement of the cases and tables about the stairway for the display of merchandise was such as tended to obscure and conceal the stairway from persons approaching it from the north. It was also calculated to attract the attention away from the stairway to the merchandise on display. It was well calculated, too, to impress the plaintiff, as she approached the entrance through the aisle along the display table on the north side of the stairway with the idea that the space between this table and the display cases against the wall on the south side of the stairway was floor space forming a passageway or aisle between the table and the cases. The railing on the north side of the stairway opening was concealed from her view, as was also the stairway opening, and there was no railing on the south side of the stairway opening. She could not see to the bottom of the display cases, which were about flush with the south side of the opening. She had no opportunity to observe the stairway until she was practically at its entrance, and just as she was about to reach the entrance, and was coming into a position to observe it her attention was drawn to an attractive dress hanging in one of the display cases in front of her, studiously displayed there for that very purpose. While her attention was thus held a step or two was all that was required to bring her to the north side of the entrance, where she

fell. If she had been apprehensive of danger, and had proceeded with the caution such apprehension would ordinarily awaken, she doubtless would have seen the stairway in time to have avoided falling into it. It is true that the law requires a person to make ordinary use of his faculties to observe and avoid danger. But it is equally true that one is not required to look out for danger where there is no reason to apprehend any. It cannot be said, as a matter of law, that the plaintiff here, in the circumstances in which she was placed, was not making ordinary use of her faculties—such use as an ordinarily prudent person would have made—at the time she fell. The stairway, masked as it was with cases and tables, arranged for the display of merchandise, with its entrance unguarded and unprotected, and with nothing to give warning of its presence, might be not inappropriately characterized as a trap or pitfall. If the defendant felt that the exigencies of its business required such an arrangement of cases and tables about the stairway for the display of its merchandise, it should have put an attendant in charge or placed some sort of warning sign, guard or protection at the entrance.

"It is obvious that the evidence makes out a case for the jury of actionable negligence on the part of the defendant, and that it does not convict plaintiff of contributory negligence as a matter of law. [Marquis v. Goldberg (Mo. App.), 34 S. W. (2d) 549; Deronet v. Woolworth Co., 89 N. J. L. 669; Shaw v. Goldman, 116 Mo. App. 332, 92 S. W. 165; Welch v. McAllister, 15 Mo. App. 492; Kean v. Schoening, 103 Mo. App. 77, 77 S. W. 335; Scott v. Kline's (Mo. App.), 284 S. W. 831; Glaser v. Rothchild, 221 Mo. 180, 120 S. W. 1; Oakley v. Richards, 275 Mo. 266, 204 S. W. 505; Hendricken v. Meadows, 154 Mass. 599; Brown v. Stevens, 136 Mich. 311; Christopher v. Russell, 63 Fla. 191; Downing v. Merchants Natl. Bank, 192 Iowa, 1250.]"

██ In addition to the above cases cited in respondents' opinion the following cases may be noted in which, on fairly analogous facts, it was held that the questions of the defendant's negligence and the plaintiff's contributory negligence were for the jury, viz., Mathews v. City of Cedar Rapids, 80 Iowa, 459; Radebaugh v. Woolworth Co., 214 Ill. App. 365. See, also, particularly as sustaining respondents' conclusion that plaintiff could not under the circumstances be held guilty of contributory negligence as a matter of law, the following additional cases: View v. Met. W. S. Elev. Ry. Co., 166 Ill. App. 154; McRickard v. Flint, 114 N. Y. 222; Engel v. Smith, 82 Mich. 1; Mangan v. Des Moines City Ry. Co., 200 Iowa, 597, 607; Cantwell v. City of Appleton, 71 Wis. 463, 468; Powers v. Penn. Mut. L. Ins. Co., 91 Mo. App. 55, 65. ██ That as a general rule negligence is not imputable to a person for failing to look out for a danger when, under the surrounding circumstances, he has no reason to suspect

that danger is to be apprehended or when it exists only through negligence of another, see Langan v. St. L. I. M. & S. Ry. Co., 72 Mo. 392, 398; Crawford v. K. C. Stockyards Co., 215 Mo. 394, 413-14, 114 S. W. 1057.

Relator contends that in holding the evidence sufficient to authorize a finding of actionable negligence on its part respondents' opinion conflicts with the following decisions of this court, viz., Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Peck v. Yale Amusement Co., 195 S. W. 1033, and Main v. Lehman, 294 Mo. 579, 243 S. W. 91.

In the Vogt case boards had been laid upon the concrete steps leading into the defendant's store to protect fresh paint and the plaintiff, emerging from the store, stepped on one of them in descending the steps and her heel caught on the back edge of the board, causing her to fall. It was daylight, plaintiff was familiar with the situation, had noticed the boards both when she had entered the store and as she started down the steps, and there was nothing to divert her attention. In holding there was no liability the court said that the method of protecting freshly painted steps which are in use by laying boards on the treads is one commonly employed and that the steps so covered were not inherently dangerous, but added:

"But in any event whatever danger inhered in their condition was perfectly obvious. There was no lurking peril; nothing touching the physical situation was hidden or concealed. What plaintiff saw in going up the steps and upon her return to come down them disclosed to her all the information which the proprietors of the store had touching both their condition and the care required to use them with safety.

"It follows that the demurrers to the evidence were well ruled by the trial court."

In Peck v. Yale Amusement Co., supra, the plaintiff fell as she left her seat and stepped into the aisle in a moving picture theater. There was a break or "step-down" in the floor level as one stepped into the aisle and it was contended that the place was insufficiently lighted. The court said that from the meager evidence "no court could say just what did cause her fall." Touching the alleged lack of light the court said that the place was evidently lighted about as picture show rooms are lighted; that there was no evidence to show negligence so far as concerned the construction of the room or the state of repair of floor and steps; and that "the only bit of evidence is the plaintiff's own conclusion of the room being dark, nor does this evidence show a condition different from what might be required in a picture show room." The court held that "upon the meager showing made by plaintiff" the trial court had properly taken the case from the jury.

In Main v. Lehman, supra, the plaintiff fell in stepping off a platform in a toilet. She had full knowledge of the situation, there was nothing to divert her attention, she had noticed and stepped upon the platform when she had entered the toilet a minute or so before, she knew and had in mind that she would have to step down as she left the platform and she carelessly miscalculated the distance to the edge of the platform. On the question of the defendant's negligence the court said that the mere fact that there was a step six inches high which the plaintiff would have to ascend and descend ''was not in itself evidence of a want of due care on defendant's part, because such steps are usual in dwellings and store buildings.'' The opinion discusses at some length the facts developed by the evidence, emphasizing the plaintiff's knowledge of the situation, distinguishing a number of cases, and holds that the demurrer to the evidence should have been sustained.

Relator seems to construe the three last above cited cases as announcing the rule ''that a store proprietor cannot be held negligent where the condition complained of does not differ from that usually and customarily found in similar establishments'' They do not so hold. The proprietor of a store or similar place of business owes to his patrons the duty to use ordinary care to see that the place to which he has invited them is reasonably safe for use for the purposes for which it was designed and for which customers are invited there. [Oakley v. Richards, supra, 275 Mo. 1. c. 276, 204 S. W. 505; Scott v. Kline, Inc., supra.] It cannot be that he is absolved from that duty because, forsooth, others conducting similar enterprises have violated it, even though, if such thing may be imagined, they have habitually done so. As to the bearing customary usage may have, if any, in determining in a given case what is ordinary care, we need not here concern ourselves. The facts stated in respondents' opinion do not show that the conditions at and about the stairway in question were those customarily maintained in similar establishments.

The above cases cited and relied on by relator on this point are clearly distinguishable from the case at bar, and respondents' opinion is not in conflict with them. So also of the additional cases cited on this point in relator's brief, viz., Amer. Brew. Assn. v. Talbot, 141 Mo. 674, 42 S. W. 679; Cash v. Sonken-Calamba Co. (Mo.), 322 Mo. 349, 17 S. W. (2d) 927; Newhouse v. St. L. Bk. Bldg. & Equip. Co. (Mo.), 326 Mo. 1047, 33 S. W. (2d) 932.

Relator contends that in holding that under the evidence plaintiff could not be declared guilty of contributory negligence as a matter of law and that the question was for the jury, respondents' opinion conflicts with the following decisions of this court: Geninazza v. R. U. Leonori A. & S. Co., 252 S. W. 417; McGinnis v. Hydraulic Press Brick Co., 261 Mo. 287, 169 S. W. 30; State ex rel. Cox v.

Trimble, 312 Mo. 322, 279 S. W. 60; Cash v. Sonken-Calamba Co., supra.

In the Geninazza case there is an observation to the effect that if the danger was "visible and obvious" to the plaintiff her failure to discover and avoid it would amount to contributory negligence but that where the danger is not so obvious that a person should have seen it in the exercise of ordinary care, failure to discover it is not negligence. On the facts of that case it was held that the question was for the jury.

In the McGinnis case the plaintiff tripped and fell over a mud scraper located near the steps leading into the defendant's building. It was daylight, the scraper was in no way concealed and there was nothing to divert the plaintiff's attention. It was simply a case of his negligent failure to observe what was plainly visible before him. He was held guilty of contributory negligence but the facts of that case are dissimilar to those of the instant case. The same is true of State ex rel. Cox v. Trimble, supra, in which the plaintiff, familiar with the building and the situation, opened the door to an elevator shaft and without looking to see if the elevator was at that floor, stepped into the opening and fell. It was held that under the facts shown he had no right to assume that the elevator was at that floor and that in so opening the door and stepping into the shaft "without taking the least precaution to see whether the elevator was in place," he was conclusively guilty of contributory negligence.

Cash v. Sonken-Calamba Co., supra, is also distinguishable from the case at bar on the facts relative to this point.

We find no conflict between respondents' opinion and any of the cases to which our attention has been called. Our writ herein should be and it is quashed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.