HANSI SUMMA v. MORGAN REAL ESTATE COMPANY, a Corporation, Appellant.—No. 37979.—165 S. W. (2d) 390.

Division Two, July 29, 1942.

Rehearing Denied, September 8, 1942.

Motion to Transfer to Banc Overruled, November 12, 1942.

*John F. Evans* for appellant.

*Everett Hullverson* for respondent; *Orville Richardson* of counsel.

BARRETT, C.—The Morgan Real Estate Company appeals from a verdict and judgment of $25,000.00 in favor of Hansi Summa for personal injuries.

The respondent fell and was injured while shopping in the appellant's market in University City. The negligence relied on as a basis of liability is that the appellant breached its duty as an owner or occupant of premises to the respondent, a business invitee, in that it failed to exercise ordinary care to have and maintain its store in a reasonably safe condition and failed to adequately warn her of a danger known to it, unknown and not apparent to her in the exercise of ordinary care for her own safety. 2 Restatement, Law of Torts, Sec. 343; 118 A. L. R. 425; 100 A. L. R. 710; 58 A. L. R. 136; 46 A. L. R. 1111; 43 A. L. R. 866; 33 A. L. R. 181.

Specifically, the respondent alleged that while she was a customer in the appellant's store a slippery, greasy substance was deposited on the floor in a place patrons were required to walk and that the floor had not been properly and adequately cleaned or the substance removed. She alleged the appellant was negligent in that, though its employees saw her walking in the pathway of and likely to come in contact with the slippery spot, they "failed and omitted to warn" her and carelessly failed "to restrain plaintiff by either word of mouth or in any other manner from walking" or "to have prevented the plaintiff from stepping" on the slick, greasy spot on the floor.

The appellant offered no evidence and contends now, as it did in the trial court, that its demurrer should have been sustained because the evidence failed to prove negligence on its part and, on the contrary, shows the respondent guilty of contributory negligence in heedlessly walking into an area where its employee was then engaged in mopping.

There were three witnesses to the facts; the respondent, her daughter, Irma Summa Bresch, and the appellant's clerk, Lee Holt.

On May 2, 1940, Hansi Summa and her daughter were shopping for groceries in the Loop Market, as they frequently did. She had put some of their purchases in her daughter's parked car and returned to buy some vegetables. There were a good many customers in the store walking back and forth, possibly ten people in the aisle alongside the vegetable counter. The store was well lighted and as she walked along inspecting the counters she occasionally looked at the floor, every eight or ten feet, to see where she was going and

to avoid bumping into people. She never saw anything on the floor and saw no one mopping in the aisle.

She purchased some cauliflower, turned away from the counter, slipped and fell. She did not know what she fell on and heard no one warn her and no one pointed out any hazard to her. She had taken eight or ten steps along the vegetable counter and was walking towards the door, three to six feet from the vegetable counter and in the aisle, when she fell.

Lee Holt was working behind the vegetable counter when he heard something break on the floor and a customer asked him if he would clean it up for her. A half pint bottle of French dressing had broken in the aisle about six and one-half feet from the vegetable counter. The dressing spread out over a spot ten or twelve inches in area and was rusty colored, practically the same color as the ground and black square composition floor. He got a mop and began cleaning up. There were eight or ten people in the aisle at the time. He picked up the broken glass and put it on the vegetable counter. Then, with his back towards the vegetable counter, he started mopping. He said:

"I made about three or four strokes with the mop, and in swinging the mop this way (indicating) I looked back over my left shoulder . . . and I saw a lady coming up right in back of me. . . . Walking . . . slow, about like that (indicating). .

"Q. How far behind you was she? A. About two feet.

"Q. Directly in back of you, was she? A. Two or three feet behind me, something like that; not directly behind me.

"Q. To the left and behind you? A. Yes, sir, to the left and behind me, and I told her to be careful, or something to that effect, that it was slick down here.

"Q. And what happened? A. Then she looked up at me but didn't stop. She didn't say anything to me but kept on walking. She took about two steps, I should say, and then stepped on the slick spot.

"Q. Had you succeeded in wiping up that place where she stepped? A. No, not yet. . . .

"Q. And this stuff that was on the floor was practically the same color as the floor? A. Yes, sir.

"Q. It wouldn't be easily visible then? A. No; it showed up as moisture. It would be pretty clear when it is moist or damp. . . . I had taken three or four strokes with the mop before she came up, and it was pretty well off. It would take a few strokes, several strokes to get it all up. . . . I should judge fifteen or twenty. . . .

"Q. What do you think you said? A. 'Watch out, it is slick.' I think I said.

"Q. And you were busy mopping at the time you said that? A. I had been mopping, and *I pulled the mop to the side waiting for her to pass.*

"Q. When you were mopping up, did you use both hands on the mop? A. Both hands, yes.

"Q. Did you continue to have your both hands on the mop all the time? A. Yes, sir.

"Q. But you moved your mop around to give her room to pass, is that right. A. Yes, sir.

"Q. And in her passing she stepped on this spot, she would naturally step on this spot if she continued to walk, would she; is that right?: A. Yes, sir. . . .

"Q. You at no time motioned her with your hand, or prevented her with your hand from walking over that spot? A. No.

"Q. You kept your two hands on the mop? A. That is right.

"Q. Now, I believe 'you said you didn't notice whether the lady heard you say anything, that is, she just kept on walking? A. I said she looked at me.

"Q. Did she give any evidence of knowing what you said—she gave no evidence of noticing what you said, is that right? A. That is correct.

"MR. EVANS: Q. You mean except by looking at you? A. That is right.

"Q. But she did, however, keep right on walking? A. That is right."

The appellant contends that these facts require the direction of a verdict in its favor because they (1) do not hypothesize any accepted theory of legal liability and (2) show the plaintiff guilty of contributory negligence as a matter of law. Its theory of non-liability is stated. as follows: "The dangerous condition of the premises was not created by defendant, the situation was open and obvious to anyone in the exercise of ordinary care, and the entire ▉▉▉ evidence clearly points to the negligence of plaintiff rather than of defendant as the proximate cause of the injury."

It is true the foreign substance was not placed on the floor by the appellant and consequently the hazardous condition was not originally created by it. And, if the dressing had been on the floor such a short time that it or its employees had no knowledge or notice of it and the plaintiff had slipped and fallen on it—nothing more appearing—the appellant would not have been liable. The occurrence would then have been similar to Robinson v. Great Atl. & Pac. Tea Co., 347 Mo. 421, 147 S. W. (2d) 648, where in the ten or fifteen minutes the plaintiff was in the store someone, without the owner's becoming aware of it, placed a box of potatoes in the store aisle, and so there was no liability because the storekeeper did not have knowledge. "in time . . . to have remedied the condition." Or similar to McKeighan v. Kline's, Inc., 339 Mo. 523, 98 S. W. (2d) 555, where there was no evidence as to how long the substance had been on the floor so as to

charge the defendant with notice so that it could thereby and thereafter cleanse the place and make it safe or warn the plaintiff of the danger.

Neither is this an instance of the proximate cause of the plaintiff's fall and injury being due to "the intervening negligent act of a third person" as was the case in Pellett v. Thomas W. Garland, Inc. (Mo.), 152 S. W. (2d) 172.

Here, after the floor became hazardous by reason of some third person's causing the rusty colored dressing to be there, the plaintiff turned from the vegetable counter, walked slowly towards Holt (who had his back to her, and was then engaged in the act of cleaning the floor and moved his mop out of her path), stepped on the oily spot and fell. He thinks he told her to "Watch out, it is slick," but she gave no evidence of understanding him and she says she heard no warning. Consequently, the appellant's position is of necessity that the substance being on the floor and Holt's being then engaged in mopping, in a well lighted store, was such an open and obvious situation that the plaintiff was bound to see the hazard and take cognizance of it. She disclaims seeing Holt in the act of mopping, as well as hearing or seeing any warning, and thus the sole question is whether the situation was so obvious as to compel her to see it.

The basis of liability of the possessor of land to his business invitee for injuries resulting from a condition existing on the premises is the possessor's superior knowledge. State ex rel. First Natl. Bank v. Hughes, 346 Mo. 938, 144 S. W. (2d) 84. He is liable "if, but only if, he knows the condition" which involves an unreasonable risk of harm to his invitee. 2 Restatement, Law of Torts, Sec. 343. Conversely, it is also a principle that a defendant storekeeper or landowner is not liable to his business invitee for injuries resulting from an open, obvious condition, just as well known to the invitee as it is to the owner. If the invitee is aware of the situation or it is such that he could not but be conscious of it, and the consequences of disregarding it, if he were using his faculties, he cannot recover. Neither is he entitled to a warning because he has all the information a warning would give him. For this reason there was no liability when the plaintiff saw and was told that the floor was being mopped and yet walked on it. Murray v. D'Oench, 347 Mo. 365, 147 S. W. (2d) 623. And so it was with the postman who fell on the slick runway and the milkman who walked on the greasy stairs; they knew the facts and so were not entitled to recover when they acted in disregard of the information they had. Paubel v. Hitz, 339 Mo. 274, 96 S. W. (2d) 369; Reddy v. Garavelli, 232 Mo. App. 226, 102 S. W. (2d) 734.

Furthermore, a business invitee cannot fasten liability on the owner or proprietor by failing or neglecting to see that which is perfectly obvious to a person in possession of his faculties. Ilgenfritz v. Missouri P. & L. Co., 340 Mo. 648, 101 S. W. (2d) 723;

Mullen v. Sensenbrenner Merc. Co. (Mo.), 260 S. W. 982; Heidland v. Sears Roebuck & Co. (Mo. App.), 110 S. W. (2d) 795; Cates v. Evans (Mo. App.), 142 S. W. (2d) 654; Stoll v. First National Bank, 345 Mo. 582, 134 S. W. (2d) 97.

There is no exact test or formula by which it may be determined whether or not a condition is so open and obvious that one is bound to see it. Each case must depend on its own facts and circumstances. Blackwell v. J. J. Newberry Co. (Mo. App.), 156 S. W. (2d) 14. But, it is our opinion that the instant occurrence does not come within any of the above cases denying a recovery for that or similar reasons. There is a vast difference in a more or less permanent condition inherent in the nature or construction of the premises or in a condition widespread, such as a large floor space wet or waxed or a condition admittedly known to the plaintiff and a small oily spot on a floor with a man mopping in a store aisle under the conditions described in this case. The condition in the instant case is more like the ladder under the edge of the counter, the water on the bank steps, the hole in the floor and the stairway behind the counter in Blackwell v. J. J. Newberry, supra; State ex rel. First Natl. Bank v. Hughes, supra; Long v. Woolworth (Mo.), 159 S. W. (2d) 619; State ex rel. Elliott's Department Store v. Haid, 330 Mo. 959, 51 S. W. (2d) 1015. For very similar occurrences in other jurisdictions see Judson v. American Railway Express Co. (Mass.), 136 N. E. 103; Eisenberg v. Irving Kemp, Inc., 11 N. Y. S. (2d) 449; Amsterdam v. Hotel Astor, 224 N. Y. S. 273; Thogmartin v. Koppel (Kan.), 65 Pac. (2d) 571; Hamilton v. Union Public Market (Cal.), 59 Pac. (2d) 459.

Here, again, we have a set of circumstances where the plaintiff might reasonably expect to encounter a condition of one kind—a grocery store floor free of a hazardous foreign substance known to the defendant and unknown to her and of which she was entitled to a warning, and was met by another—a clerk in the process of eliminating the condition but failing to adequately warn her. Long v. F. W. Woolworth, supra; Ilgenfritz v. Missouri P. & L. Co., supra. Without setting forth each and every circumstance which affirmatively tends to support the appellant's argument and conversely the facts and circumstances sustaining the respondent's contention and weighing them against one another—it is our opinion that under all the facts and circumstances whether the condition complained of was so obvious that the respondent was bound to see it and whether she was contributorily negligent in not observing it were both questions of fact for the jury's consideration and their finding, in these respects, is not based on such unreliable facts and circumstances that we may disturb it. Long v. Woolworth, supra; State ex rel. Elliott's Dept. Store v. Haid, supra.

In this connection the appellant contends that since the respondent introduced and used Lee Holt as a witness she is bound by his uncontradicted statements and cannot use the favorable inferences from her own testimony in disregard of his positive evidence in order to piece out a state of facts demonstrating liability. Specifically the contention is that she is bound by his positive testimony that he did give her a warning. We have fully set forth his evidence in this respect and the case does not come within the things condemned in Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W. (2d) 626; Rodan v. St. Louis Transit Co., 207 Mo. 392, 105 S. W. 1061; Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600; State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S. W. (2d) 864. There a plaintiff offered only one witness to prove a fact and then desired that the jury disregard it and find the contrary from other circumstances in the same witness' testimony, which, of course, cannot be done. As is specifically pointed out in the Draper case: ''This is not so much a matter of being bound by what his witness says as it is a failure of proof of an essential fact.''

The rule applicable here is as it is negatively stated in Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S. W. (2d) 589, 594: ''In other words the fact alone that the testimony of the adversary witness is unfavorable will not support a substantial inference that the contrary is true, *where there is nothing in his testimony or that of some other witness tending to prove the opposite version.*'' Or as it is affirmatively stated in Jones v. Rock Island Ry. Co., 341 Mo. 640, 647, 108 S. W. (2d) 94: ''Plaintiff was not bound by such part of the testimony of defendant Wright as was contrary to, and contradictory of, plaintiff's theory as pleaded in her petition and presented by her testimony and other evidence in the case favorable thereto. . . . Therefore while the plaintiff called the motorman as a witness she was not thereby precluded from establishing her case by other testimony contradictory of that given by the motorman.'' See and compare to the above cases for the full and complete development of the rules and their refinements: McCall v. Thompson, 348 Mo. 795, 155 S. W. (2d) 161; Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. (2d) 548; Gould v. Chicago, B. & Q. Ry. Co., 315 Mo. 713, 290 S. W. 135; Lewis v. Wabash Ry. Co., 142 Mo. App. 585, 121 S. W. 1090; 6 Jones, Commentaries on Evidence, Sec. 2432; 80 A. L. R. 624.

The plaintiff's own testimony that she heard no warning and saw nothing directing her attention to the condition resulting in her injury while negative in character is nevertheless evidence of the fact that no warning was given and whether her version or Holt's is to be taken as true was for the jury. Borrson v. M.-K.-T. Ry. Co. (Mo.), 161 S. W. (2d) 227; Sing v. St. Louis-San Francisco Ry. Co. (Mo.),

30 S. W. (2d) 37; 2 Wigmore, Evidence, Sec. 664, p. 778. At least, what he said about it, under the circumstances, is not conclusive on her.

The appellant assigns as error the giving of instruction one for the stated reasons that it is contrary to the established law, a roving commission as to what constituted a warning and conflicts with given instructions 4 and 5. The instruction hypothesizes that if the plaintiff was unaware of the slippery floor and about to step on the greasy spot and that Holt "knew of the location of said slippery place . . . and saw plaintiff about to step on said slippery place . . . *in time* . . . *to have given plaintiff a sufficient warning, either by word of mouth or manually, or to have restrained the plaintiff from stepping on said place,*" etc., and thus prevented plaintiff's fall and injury she was entitled to recover. The appellant complains of the underscored language and particularly that part of it which says "or to have restrained the plaintiff," which, it says, gave the jury the impression that the clerk was bound to restrain the respondent by blocking her path or holding her with his hands.

Of course, the true test in this case was whether the appellant "gave a warning adequate to enable (the respondent) to avoid the harm." 2 Restatement, Law of Torts, Sec. 343. The duty the proprietor owes the invitee when he knows of the condition and the invitee does not is "to give him adequate and timely notice and warning." 38 Am. Jur., Sec. 96. This is the difference in the proprietor's duty and obligation to a business invitee and to a gratuitous licensee; the former is entitled to expect that the possessor, when he knows of the hazardous condition, will either eliminate the hazard by making the premises safe or warn him of the condition. 2 Restatement, Law of Torts, pp. 939-940, 943.

While the respondent's instruction followed her pleading and proof, yet the alternative phrase that the appellant should have restrained her should have been eliminated. The question was, in accordance with the appellant's duty, whether the respondent was adequately warned, in any manner reasonably calculated to direct her attention to the hazard involved. We do not mean to say that the word "restrain" should absolutely not have been used in any manner because it may have been, as it may be under other circumstances, necessary to "restrain" a person under some conditions in order to adequately discharge one's duty to warn. But as used in this instruction, as we interpret it, the jury may have thought alternative duties imposed on the appellant, either to warn or to restrain.

At the appellant's request the jury was instructed that the sole duty upon it "was to warn plaintiff of such dangerous condition" and if they found "that a warning was given" plaintiff was not entitled to recover. In another instruction the jury was told that if the plaintiff knew of the obviously dangerous condition there was no duty on the defendant "to warn or *otherwise prevent her from be-*

*ing injured thereby.*'' These instructions presented the appellant's theory of its duty and of its non-liability and are the converse of the respondent's theory of her case and do not conflict with instruction number one.

Neither does instruction one so completely fail to give the jury any guidance as to what acts of omission or commission constituted a failure to adequately warn so as to be a roving commission to the jury to find negligence from whatever conduct it may have fancied, as was the case in Owens v. McCleary, 313 Mo. 213, 281 S. W. 682, and Hutchinson v. St. Louis-San Francisco Ry. Co., 335 Mo. 82, 72 S. W. (2d) 87.

While we think the instruction subject to the criticism noted, considering it in the light of the pleadings, the evidence and the other instructions, it is not such an error committed by the court against the appellant ''and materially affecting the merits of the action'' that we should grant a new trial because of it. Sec. 1228, R. S. Mo. 1939.

Finally, the appellant concedes that the respondent sustained a serious injury but contends that the $25,000.00 verdict is excessive.

At the time of her injury the plaintiff was seventy-two years of age, with an expectancy of seven to eight years, and had received medical attention for arteriosclerosis and high blood pressure, though she earned fifteen to twenty dollars a week playing the piano for her daughter's dancing school. When the respondent fell her right hip was fractured, the fracture running through the neck of the femur with an upward displacement. A closed reduction of the fracture was unsuccessful and a ten inch incision was made and the bones were brought together by a Smith-Peterson nail. Subsequently the nail was removed and when her condition failed to improve it was found there was an infection and a necrosis at the head of the femur and she was again operated on and the infection removed. Because of her age and previous health it was necessary to use hyoscin, gas and local anesthetics. After the last operation she developed an embolism, paralyzing her left side and though she had improved considerably there was some doubt as to the permanent effects of the paralysis. Her hip will be stiff and about one-half inch short. She was in the hospital about nine months and suffered great pain. Her hospital and medical bills at the time of the trial were $5,306.91 and she will require further medical attention.

Though this is a very hasty sketch of the respondent's injuries, treatment and disability, we think it sufficient for the purposes of this opinion. Even though there is no way to measure it, the ultimate test of whether or not a verdict is excessive or inadequate is what will fairly and reasonably compensate the plaintiff for her injuries. Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S. W. (2d) 903. Considerable weight is of necessity attached to precedent in deter-

mining what is and what is not an excessive verdict. Morris v. E. I. Du Pont De Nemours & Co., 346 Mo. 126, 139 S. W. (2d) 984; 102 A. L. R. 1125; 46 A. L. R. 1230. One element to be considered is the age of the injured person. 15 Am. Jur., Sec. 71, p. 480.

In Thompson v. Quincy, O. & K. C. Ry. Co. (Mo.), 18 S. W. (2d) 401, a remittitur of $6,000.00 was required from a $24,000.00 verdict. There a man seventy-three had his left leg amputated nine inches below the knee, an infection resulted and a second operation was required. He also sustained a broken left arm, a fractured clavicle, paralysis of the left arm below the elbow and other minor injuries.

Being fully conscious of the impossibility of exactness in adequately and fairly compensating a person injured as the respondent was, yet considering her age, her expectancy, her earning capacity, the seriousness of her injury and the suffering she has and will endure, we are of the opinion the verdict is excessive in the sum of $7,500.00.

It is, therefore, ordered that if the respondent will within ten days enter a remittitur of $7,500.00 as of the date of the judgment, the judgment will be affirmed for the sum of $17,500.00; otherwise the judgment will be reversed and the cause remanded. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.