255 S.W.2d 756 (1953)
DOUGLAS
v.
DOUGLAS et al.
No. 43002.
Supreme Court of Missouri, Division No. 1.
March 9, 1953.
Robert E. Seiler, Seiler, Blanchard & Van Fleet, Joplin, for appellant.
Ray E. Watson, F. H. Richart, Rex Titus, Watson, Richart & Titus, Joplin, for respondents.
COIL, Commissioner.
Defendants had verdict and judgment in plaintiff's suit for $10,000 for personal injuries. Plaintiff-appellant contends that the trial court erred in giving instructions. Defendants-respondents urge that plaintiff failed to make a submissible case. We have decided that the instructions attacked are prejudicially erroneous. Thus, it is necessary to determine whether plaintiff made a case for the jury. In so determining, plaintiff's evidence is to be considered as true and plaintiff given the *757 benefit of all reasonable inferences from the favorable evidence. Defendants' evidence is disregarded except that part which is favorable to plaintiff. Chamberlain v. Thompson, Mo.Sup., 256 S.W.2d 779.
Plaintiff and her husband operated the Waldorf Restaurant in Joplin, next door to defendants' partnership business, ABC Towel Supply. Defendants rented uniforms, towels, etc., to various commercial establishments. Plaintiff, who had for a long time rented waitress uniforms from defendants, entered defendants' building and, as was her custom, proceeded through a hall, past a counter, to the entrance to a room referred to as the "back room." She intended to rent a clean uniform from defendants' employee, Mrs. Finn, who always waited upon plaintiff in the back room. When plaintiff reached this back room doorway, she saw Mrs. Finn (whose regular duty it was to mop the floor) mopping the floor on the west side of the room and indicated that she, plaintiff, didn't want to "track up her floor." Mrs. Finn replied, "It is all right. I have already mopped there. Come on through," and pointed to the east side of the room which was partially in front of the doorway in which plaintiff was standing, and was the part of the room theretofore used by plaintiff when she obtained clean uniforms. The floor was covered with a light color linoleum. Plaintiff looked at the portion of the floor designated and it appeared to be clean and dry; she saw no "substance or film or coating, or anything of that sort on it"; she had taken five or six steps at her ordinary gait across the portion of the floor indicated, when her left foot "slipped on something", the right side of her left foot turned inwardly and she fell, breaking her left leg. She fell on the portion of the floor which Mrs. Finn had indicated for her use. The fact that plaintiff fell is not disputed.
Plaintiff said: "Well, right down by my foot was a dark mark there, and it was, kind of looked like some kind of film or something where I had slipped." Something was on the floor there. The mark was "about 4 or 5 inches long," and "about a half inch" wide. The mark appeared "fresh" and was at the place where her foot slipped. She sat on the floor for a "couple of minutes", had her hands on the floor and felt something "sort of sticky". The substance plaintiff felt on the floor and on her hands and uniform immediately after her fall had the same consistency and felt the same as undissolved soap powder.
Plaintiff returned to the Waldorf Restaurant where her husband removed her left shoe. He found a "greasy film", "slippery" on the right side of her left shoe between the sole and the upper part. The husband said, "There couldn't have been anything on my restaurant floor to have left that slimy or slick stuff that was on her shoe."
About 11 a. m. on the day of the casualty, Mrs. Finn had borrowed from plaintiff a white granite dishpan and some "Duz" which plaintiff had poured into the pan. Mrs. Finn had borrowed "Duz" once or twice before from plaintiff. These articles were obtained for the purpose of being used to mop the defendants' floor.
Plaintiff said that "Duz" is a "granulated soap powder" which must be used with "real hot water" or it would not dissolve; that, if not completely dissolved, there is a "greasy slick substance in the bottom of your pan", similar to the substance she felt on the floor and on her clothing immediately after her fall.
Mrs. Finn said that she borrowed the pan but denied that she borrowed "Duz"; she testified she had used "Spic and Span", a cleaning preparation or detergent, in the mopping water that day; that "Spic and Span" may be "slick and slimy" if placed on the floor and a small amount of water added, but if dissolved in a pan of water it would not leave a gritty, slippery residue.
Plaintiff occupied the status of an invitee upon defendants' premises, including the back room. Defendants were bound to exercise ordinary care to maintain their premises in reasonably safe condition for plaintiff's use. Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 654[2], 101 *758 S.W.2d 723, 726[2]. However, the basis of, or reason for, defendants' liability as possessors of land for injuries sustained by their business invitees, is defendants' superior knowledge of an unreasonable risk of harm of which the invitee does not or in the exercise of ordinary care should not know. Thus, defendants as storekeepers are not liable for injuries resulting from open and obvious conditions which are or should be as well known to the invitee as to defendants. And in such circumstances there is no duty to warn because the invitee has the information which would be conveyed by a warning. Summa v. Morgan Real Estate Co., 350 Mo. 205, 213[1], 165 S.W.2d 390, 393[1, 2].
As we understand, in urging that plaintiff failed to make a submissible case, defendants' position is: first, that plaintiff's evidence shows only "a mere washing of the linoleum floor by respondents' employee which is not negligence", and this, even though the floor is temporarily slippery by reason of having been recently mopped. No purpose may be served in discussing this contention, for, as the foregoing summary of the evidence favorable to plaintiff clearly discloses, the floor was not slippery because temporarily wet from recent mopping. Plaintiff's evidence is to the contrary, viz., that the portion of the floor which plaintiff was especially invited to use and which plaintiff did use, appeared to be clean and dry and in fact was not wet or damp.
Defendants next urge that "the condition of the floor * * * was as apparent to appellant as to respondents and respondents had no superior knowledge of the condition or danger." Plaintiff's evidence (and the reasonable inferences therefrom) was that defendants' employee whose duty it was to mop the floor put the greasy, slick substance on the floor and thus defendants, through their employee, had knowledge of a condition of the floor which was unknown to, and which was not discovered by plaintiff by observing the floor. The jury could reasonably find from the direct and circumstantial evidence, heretofore summarized, that the proximate cause of plaintiff's fall and injuries was the presence of a substance on the floor consisting of some undissolved cleaning agent placed there by defendants' employee during the mopping process. Thus, the case is one in which plaintiff could reasonably expect to encounter a floor in one condition (free of hazardous foreign matter) and actually encountered one in another condition (a slippery substance on it likely to cause fall and injury). Van Brock v. First Nat. Bank in St. Louis, 349 Mo. 425, 433[3], 161 S.W.2d 258, 262[8].
But defendants say that plaintiff failed to "sustain her burden of proving, by legitimate evidence, that respondents' floor, where she fell, was unsafe at the time and place of the accident by reason of its being in a soapy and slippery condition." Defendants' argument in this respect appears to be that plaintiff's statements "that she did not know what caused the mark on the floor made by her shoe and that she did not know what was on the floor" and that she did not know what caused her to fall, are "admissions" which totally destroy plaintiff's evidence to the contrary. It is true that on cross-examination answers substantially as mentioned above were elicited. But defendants have isolated these statements from the context of plaintiff's total testimony and have ascribed to them a meaning which is not justified when plaintiff's testimony is considered in its entirety. Suffice to say that an examination of plaintiff's testimony shows that these answers could be reasonably construed by a jury as meaning that plaintiff could not positively state what the substance was which had caused her to slip and fall. These answers did not necessarily destroy the probative force of plaintiff's other testimony in which she described the mark made by her shoe and described the nature of the substance on the floor; nor did such answers cause plaintiff's case to be based upon "mere conjecture".
We are of the opinion that the facts in this case proved by "positive testimony and circumstantially are of such value and probative force that the jury could and had a right to reason from them and infer *759 other facts which create liability, * * *." And " * * * under all the facts and circumstances, in the instant case, the plaintiff sustained her burden of adducing such evidence as to warrant the court in submitting [the persuasiveness of such evidence] as to negligence and proximate cause to a jury." Van Brock v. First Nat. Bank in St. Louis, supra, 161 S.W.2d 262; Summa v. Morgan Real Estate Co., supra, 165 S.W.2d 390; Petera v. Railway Exchange Bldg., Mo.App., 42 S.W.2d 947.
The jury found for defendants and there was ample evidence to support such finding. But in determining submissibility we have ignored defendants' evidence unfavorable to plaintiff. However, in considering defendants' instructions here attacked by plaintiff, we note that defendants' evidence was such that a jury could reasonably find that when plaintiff arrived at the door to the back room defendants' employee had just completed mopping (including a second mopping or rinsing with clear water) in front of the door and including the area where plaintiff fell; that the floor was still wet or damp and obviously so; that there was no foreign substance on the floor; and that plaintiff fell as a result of walking on her heels upon a floor which was obviously wet or damp.
Instruction 8 was in part: "Therefore, if you find and believe from the evidence that Osa Douglas saw, or by the exercise of ordinary care could have seen the condition of the floor then and there existing as detailed to you by the evidence, and that such conditions then and there existing as detailed in the evidence were such that an ordinarily prudent person would not have walked upon the floor under such conditions as detailed in the evidence, if you do so find, and if you further find that the lack of ordinary care upon the part of Osa Douglas as defined in other instructions was the proximate cause of her said injuries, if any, then your verdict should be for the defendants and against the plaintiff Osa Douglas." (Italics ours.)
The foregoing instruction does not hypothesize the facts constituting the "condition of the floor" referred to therein; nor does the instruction by any other method indicate what "condition of the floor" was meant. It appears that, under the evidence and the respective theories of plaintiff and defendants, there was essentially a simple factual issue to be determined. This, whether plaintiff fell because she walked on her heels across a portion of the floor which was obviously wet or damp from recent mopping, or whether the floor was dry and appeared clean and she fell because of the presence of a residue of cleaning material placed on the floor by defendants' employee during the mopping process. There were two totally different versions of "the condition of the floor." The instruction, however, directed a verdict for defendant if the jury found that plaintiff in the exercise of ordinary care saw or should have seen the "condition of the floor then and there existing as detailed * * * by the evidence, and that such conditions * * * were such that" one exercising ordinary care would not have walked on the floor, etc. Thus, a verdict for defendant was directed even though the jury found the floor was in the condition "detailed to you by (plaintiff's) evidence", if the jury also found that one, in the exercise of ordinary care, would not have walked on the floor "under such conditions". The trouble with the instruction (the same defect is present in the fore part of the instruction not quoted above) in this respect is that defendants did not contend that the floor was in the condition described by plaintiff, defendants contended to the contrary; and there was no evidence (plaintiff's or defendants'), direct or circumstantial, from which the jury could reasonably find that plaintiff failed to exercise ordinary care in walking upon the portion of the floor in question if it was in the condition described by plaintiff. Of course, if there had been evidence from which the jury could reasonably have found that the condition of the floor was such, both under plaintiff's theory and under defendants' theory, that one in the exercise of ordinary care would not have walked upon it, then the instruction *760 would not be erroneous for failure to hypothesize either condition.
Plaintiff's other criticisms of the instruction need not be discussed. Upon a retrial, defendants will most likely offer an instruction so drawn as to obviate the grounds of plaintiff's other attacks upon this instruction.
Instruction 6 is long and somewhat repetitious. Essentially, it told the jury that if "the floor of the premises where plaintiff fell" was being mopped when plaintiff fell, that plaintiff "assumed the risk of all ordinary perils pertaining to walking upon a linoleum floor then in the process of being mopped and cleaned" and if plaintiff fell as a result of "having assumed an ordinary peril, risk and danger pertaining to walking upon a linoleum floor then being mopped and cleaned", and if said "peril, risk, and danger" was or should have been known to plaintiff, then plaintiff could not recover.
There was no dispute that a portion of the floor of defendants' premises was being mopped when plaintiff fell. The dispute was as to the condition of the portion of the floor used by plaintiff. Under this instruction the jury could find, without any evidence to support the conclusion, that plaintiff should have appreciated the "peril" of the presence of a residue of a cleaning material on an apparently clean, dry floor, and if so, return a verdict for defendant. The error in this instruction is essentially the same as that in instruction 8, in that neither limits the jury, in reaching the conclusion directed, to a finding of a condition of the portion of the floor being used by plaintiff which would support or justify the directed result.
The judgment is reversed and the case remanded.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.