Aileen V. FREEMAN, Appellant,

v.

MYRON GREEN CAFETERIAS COMPANY,
a Corporation, Respondent.

No. 45788.

Supreme Court of Missouri,
En Banc.

Nov. 10, 1958.

Clyde J. Linde, Robert B. Langworthy, Billy S. Sparks, Kansas City, for respondent. Langworthy, Matz & Linde, Kansas City, of counsel.

Arthur C. Popham, Sam Mandell, Lee D. Seelig, Kansas City, for appellant. Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel.

COIL, Commissioner.

Aileen Freeman, plaintiff below, fell and was injured as a result of catching the toe of her shoe under the leg of a clothes tree in defendant's cafeteria in Kansas City. Trial of her claim for $30,000 as damages for alleged injuries resulted in a defendant's verdict. She appealed from the ensuing judgment and contends the trial court erred in giving instruction 6. Defendant counters that the instruction was correct but that, in any event, plaintiff failed to make a submissible case as to defendant's negligence and that she was contributorily negligent as a matter of law. Inasmuch as we have decided that instruction 6 was reversibly erroneous, it is necessary that we first determine the contention that the trial court should have directed a defendant's verdict.

Plaintiff, 49 at trial time, was a customer in defendant's cafeteria in February 1954. She obtained food, proceeded to the balcony, placed her tray on a table, and hung her coat on a nearby clothes tree. The table at which she sat and the one immediately to the east were identical, rectangular-shaped tables with two chairs on each side. The north ends of those tables were flush against the north wall. Also at the north wall with at least one of its legs touching it, and apparently equidistant between the table at which plaintiff sat and the table to the east (which distance plaintiff estimated to be three feet), was the clothes tree in question.

While a picture of the lower part of the tree was in evidence, the description of it contained in defendant's answers to plaintiff's interrogatories is unsatisfactory and we are uncertain as to its dimensions. That answer was, "The coat rack * * * was 5 ft. 11 in. high, weighed 11 lbs., and had four legs to support the coat rack. The legs were 9½ in. long, 1½ in. high, were 5 in. in depth at the center of the coat rack, and were rounded so that the depth at the end of the legs was 1½ in." Looking at the picture, we note there are four legs which are fastened to a center post and which legs appear to start at a place on that post about two or two and one half feet above the floor and which continue down the center post until near its bottom where each of the legs extends outwardly and downwardly in a concave curve until the end of each leg reaches and rests upon a knob or piece of wood which, as we understand, is one and one half inches high; thus, the end of each leg is elevated one and one-half inches above the floor. We also understand that each of the legs extends out from the center post for nine and one-half inches.

Mrs. Freeman was seated in the south chair on the east side of the table. She arose, pushed her chair under the table, turned to her right so that she was facing north, took a step toward the clothes tree, removed her coat therefrom, and, as she turned west, started to put it on when the toe of her right shoe caught under something which caused her to fall backward to the floor in the space between the tables. She realized as she lay on the floor and looked at the clothes tree that she had caught the toe of her right shoe under one of the protruding elevated legs.

Mrs. Freeman's coat was the only article on the clothes tree at the time and she apparently was the only person at either of the two tables we have described. Plaintiff

had good eyesight. The lighting was adequate. The floor was covered with inlaid linoleum made of alternating squares of dark brown and tan. She had not theretofore been on defendant's balcony. The clothes tree did not move at any time. She had not seen the legs of the clothes tree prior to her fall. After her fall she noted that the clothes tree was a dark mahogany and that one of its legs rested upon one of the dark brown linoleum squares. She had never seen a clothes tree like that one. Most of those she had seen rested on flat bases.

Plaintiff's only witness, other than doctors, was an engineer who operated a testing laboratory. He testified that there were methods in customary use to provide for the hanging of clothing in public places in such a way that there were no legs or other protrusions over which patrons could trip.

Defendant adduced no evidence other than medical.

█ Defendant, as the operator of a restaurant, had the duty to exercise ordinary care to maintain his restaurant and its facilities in reasonably safe condition for the use of patrons exercising ordinary care. Consequently, defendant would not be liable if plaintiff's injury resulted from an obvious condition which, together with the consequences of disregarding it, was or should have been as well known to her as to defendant and, if the condition (and the consequences of disregarding it) which caused or contributed to cause the injury was one of which plaintiff must have been conscious if she had used her faculties, she cannot recover. Douglas v. Douglas, Mo., 255 S.W.2d 756, 757 [2–5]; Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W. 2d 390, 393 [1, 2] [3].

It is defendant's contention that the clothes tree was an ordinary coat rack in general use which had been placed against a wall in a well-lighted conspicuous place; that plaintiff, if she had used her faculties, was bound to have observed its presence

and to have realized the consequences of ignoring it; and that, consequently, under the applicable rules, defendant was not negligent. (Defendant also argues, as we understand, that the only possible theory on which plaintiff could recover in this case is the "aisle rule" under which, defendant says, liability is imposed for aisle conditions which are treated as though they are hidden or latent defects because the patron's attention is diverted from the aisle to other portions of the premises by the proprietor's displays. Actually, the clothes tree in question was not in an aisle in the sense that patrons passed by it in going from one part of the cafeteria to another. In any event, we are of the opinion that "aisle" cases, while generally applicable, do not announce any separate rule or doctrine applicable to aisle cases as distinguished from other proprietor-invitee cases. And we do not agree with defendant's premise that unless this is an "aisle" case, defendant could not have been negligent.)

█ We think defendant has failed to recognize the difference between one's duty, as a matter of law, to see and observe an object as such and one's duty to observe in detail the construction of that object, and to recognize the consequences of disregarding the manner of that construction. So it is in the instant case that plaintiff had the duty, as a matter of law, to see the clothes tree and its position in the cafeteria, and it is apparent that she did see and observe the clothes tree sufficiently to have hung her coat upon it and to have removed her coat from it. Thus, as we see it, the debatable question is not whether she saw or must have seen the clothes tree as an object and must have recognized it as a commonplace object occupying a certain position on the floor, but whether, in the exercise of ordinary care, plaintiff was, as a matter of law, required, under all the circumstances in evidence, to also have observed that the clothes tree was so constructed that it had legs which each extended out from the center post for nine and one-half inches and each of which rested upon

a wood block so that each leg was elevated one and one-half inches above the floor, and whether ordinary care also imperatively required that plaintiff must have recognized that such construction meant that she must take care to avoid getting close enough to the clothes tree to catch the toe of her shoe under an elevated protruding leg as she turned away after having removed her coat.

■ We agree with defendant that clothes trees generally are commonplace articles in widespread use. There was no evidence adduced, however, that clothes trees constructed as the instant one was are customarily used. And while we think it is common knowledge that clothes trees which rest upon the floor are in general use, we are not prepared to say that it is common knowledge that clothes trees of any particular construction are customarily used in restaurants. The only direct evidence on the subject was the testimony of plaintiff's witness Poisner, who said it would be "unusual" if the legs of a clothes tree "stuck out so some one could trip over them." If defendant intended to invoke the rule sometimes stated that it could rely "upon the sufficiency of a contrivance in common use, which, in the light of experience gained in common use, has been found to answer the purpose for which it was designed and intended," provided its construction was not inherently dangerous, Walser v. Kuhlmann, Mo.App., 176 S.W.2d 658, 660 [4, 5], suffice to say, without discussion of the rule as it might otherwise apply to the instant case, there was no evidence to support such a theory. See Baker v. Kansas City Terminal Ry. Co., Mo., 250 S.W.2d 999, 1002.

■ In our view, it was a jury question as to whether defendant exercised ordinary care in providing for patrons a clothes tree constructed as was instant one, i.e., it was for the jury to say whether defendant reasonably should have anticipated that customers exercising ordinary care in the use of that clothes tree would be likely to sustain some injury as a result of its construction.

While we have been considering whether there was a submissible case as to defendant's negligence, what we have said necessarily tends to relieve plaintiff of the charge that she was contributorily negligent as a matter of law. Defendant, however, seizes upon a statement by plaintiff, made in describing what she did when she arose from the table and started to obtain her coat, as convicting her of contributory negligence. Plaintiff testified that after she had pushed her chair under the table she stepped forward to obtain her coat and did not glance or look where she was walking. She just stepped over to the rack, "it was right there at my hand."

Defendant seeks to give that testimony the preclusive meaning that plaintiff did not look where she was going and thus, we suppose, did not even see the clothes tree. Defendant, in so contending, has isolated plaintiff's one statement from her testimony as a whole and has given to that statement a meaning which is not compelled when her whole testimony is considered most favorably from plaintiff's standpoint. Considering all of plaintiff's testimony, the jury reasonably could have found that plaintiff meant (by the statement that she did not glance or look) that she did not at that time observe in detail the area traversed by the one step she took, but, on the contrary, that she made a normal automatic movement toward the clothes tree where she knew she had theretofore hung her coat.

■ It is clear that plaintiff, in the exercise of ordinary care, had to have been conscious of the presence and location of the clothes tree, but we do not wish to say, as a matter of law, that ordinary care required plaintiff to have so closely observed the clothes tree as to have determined the fact that, and to have been conscious of the consequences of disregarding the fact that, the clothes tree was so constructed that its elevated legs protruded outwardly toward or into the area in which one would stand in removing

clothing from it. Miles v. Ozark Bowl, Mo. App., 250 S.W.2d 849, 851 [2] [3].

■ Our conclusion is that different minds reasonably might draw different conclusions from the undisputed facts of the instant case and, thus, the questions of defendant's and plaintiff's negligence were for the jury. Fortner v. St. Louis Public Service Co., Mo., 244 S.W.2d 10, 13 [1–3].

Defendant has cited 33 cases from this and other jurisdictions in support of its contentions as to negligence. We have examined all of them and while all are in point in the sense that they involve fact situations which call for the application of the legal principles applicable to the proprietor-invitee relationship, none is factually sufficiently like the instant case to be a controlling precedent. And our search has failed to disclose a case involving an injury resulting from an invitee's use of a clothes tree provided by a proprietor for his customers' use. Generally supporting our conclusions are: Haverkost v. Sears, Roebuck & Co., Mo. App., 193 S.W.2d 357, 362 [5] [6, 7]; Summa v. Morgan Real Estate Co., supra, 165 S.W.2d 393 [4]; Miles v. Ozark Bowl, supra; Cameron v. Small, Mo., 182 S.W. 2d 565, 569 [10–12]; Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468, 473–475.

Instruction 6 was: "The Court instructs the jury that it was the duty of plaintiff Aileen V. Freeman to use ordinary care for her own safety, and if you find that Aileen V. Freeman knew, or in the exercise of ordinary care should have known that the hall tree rested on the floor, and if you find that if she had looked at the floor and the hall tree mentioned in evidence she could have seen that the hall tree had legs resting on the floor, and if you find that plaintiff did not glance and look where she stepped as she removed her coat from the hall tree, if so, and if you find that plaintiff was thereby negligent, and if you find that by reason of her failure to look, if so, she caught her right foot under one of the legs of the hall tree, if you so find, and if you further find that such failure to look, if so, directly contributed to cause her to fall, then regardless of any other issues of fact, your verdict should be for defendant Myron Green Cafeterias Company and against the plaintiff, Aileeen V. Freeman."

It is apparent from what we have said heretofore that the question for the jury as to plaintiff's negligence was whether the exercise of ordinary care required her to so closely observe as to discover and appreciate that the clothes tree was so constructed that it had legs which protruded and which rested on blocks one and one-half inches high and that, unless she was careful not to get too close, the toe of her shoe was likely to catch under one of the elevated legs. It seems to us that a jury would not understand that any such question was submitted by instruction 6.

The first clause of the instruction abstractly states that it was plaintiff's duty to exercise ordinary care for her own safety. Inasmuch as that clause is not in any way tied in with the rest of the instruction, it may be ignored in the further consideration of the instruction. Eliminating the first clause and the latter part which hypothesizes proximate cause, the findings required by the jury were these:

1. If you find plaintiff knew or in the exercise of ordinary care should have known that the hall tree rested on the floor, and

2. If you find that if plaintiff had looked at the floor and the hall tree she *could have seen* that the hall tree had legs resting on the floor, and

3. If you find that plaintiff did not look where she stepped as she removed her coat from the hall tree and was thereby proximately negligent.

The required finding numbered 1 above has little to do with any real issue in the

case but, in any event, it had no effect other than to have required a finding that plaintiff in the exercise of ordinary care should have known that the hall tree rested on the floor in some manner—as opposed, we would understand, to hanging from the wall or ceiling. The noticeable fact about the unessential finding numbered 1 is that it is the only required finding which correctly refers to plaintiff's duty to have *exercised ordinary care* to have known or to have seen, etc.

Finding numbered 2 above required that the jury find that if plaintiff had looked at the floor and the hall tree she *could have seen* that the hall tree had legs resting on the floor. Note that the instruction did not require a finding to the effect that if plaintiff had looked at the floor and the hall tree she would have, or in the exercise of ordinary care should have, seen the manner in which the hall tree's legs rested upon the floor. As clause 2 is written, it serves only to require a finding that it was *physically possible* for plaintiff by looking to have seen that the hall tree had legs and that they rested upon the floor. Certainly that was not tantamount to a finding that the exercise of ordinary care required plaintiff to have looked and to have observed closely enough to have known the manner in which, rather than the fact that, the hall tree's legs rested upon the floor. The fact that plaintiff *could have seen* by looking that the hall tree had legs resting on the floor was not essentially important. Essentially important was, as stated, whether plaintiff in the exercise of ordinary care saw or should have seen that the legs of the hall tree were so constructed, etc.

Finding numbered 3 above required the jury to find that plaintiff did not look where she stepped as she removed her coat from the hall tree and that such failure to look was proximate negligence. At first blush it would appear that irrespective of any deficiencies in other parts of the instruction, the clause called finding 3 above was within itself a complete and proper submission. For at first it would appear that if plaintiff negligently failed to look where she stepped as she removed her coat from the clothes tree and if because she failed to so look she caught her foot under one of the legs of the clothes tree which caused her to fall and to be injured, plaintiff's contributory negligence was properly submitted. On further examination, however, the fallacy in such a submission appears. It is this, that the jury could not properly have found that plaintiff was "thereby proximately negligent," i. e., by having failed to look where she stepped as she removed her coat from the hall tree, unless the jury had priorly found that plaintiff in the exercise of ordinary care should have so looked as to have observed the manner in which the legs of the hall tree were constructed and the manner in which they rested on the floor, and so as to have recognized the danger to her if she failed to heed their presence. In other words, whether plaintiff was negligent in not looking where she stepped so as to avoid the effect of the manner in which the legs of the clothes tree were constructed at the time she removed her coat depended on whether the exercise of ordinary care required plaintiff to have known of the necessity of avoiding the presence and effect of the protruding legs of the clothes tree. As was said in Cameron v. Small, supra, 182 S.W.2d 570: " * * * plaintiff *should not be barred from recovery for failure to exercise ordinary care in observing*, if, by the exercise of ordinary care in observing, she could [or should] not have seen an unsafe condition which caused her injury; * * *." (Bracketed insert ours.) That is to say that plaintiff "should not be barred from recovery for failure to exercise ordinary care in observing," unless, by the exercise of ordinary care in observing, she could and should have seen an unsafe condition which caused her injury.

We think, for the reasons stated, the act of omission hypothesized, viz., plaintiff's failure to have looked where she stepped as she removed her coat from the clothes tree, was not the act of omission which the jury reasonably could have found constituted proximate negligence in this case. And we are further of the opinion that a juror would not understand from the instruction that to convict plaintiff of contributory negligence he was required to find that *plaintiff failed to exercise ordinary care for her own safety* in failing to so look as to observe the details of the construction of the clothes tree and thereby recognize a danger to herself if she ignored the consequences of that construction.

The judgment is reversed and the case remanded for a new trial.

## PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court en Banc.

WESTHUES, LEEDY and DALTON, JJ., concur.

HOLLINGSWORTH, C. J., concurs in opinion filed.

HYDE, J., dissents in separate opinion filed.

EAGER and STORCKMAN, JJ., dissent.

## HOLLINGSWORTH, Chief Judge.

I concur because I am convinced and I understand the opinion of COIL, C., to hold that Instruction 6 constituted clear misdirection in that it failed to submit the decisive issue. Consequently, I further believe that the rule with reference to clarifying or amplifying instructions, as announced in Hooper v. Conrad, 364

Mo. 176, 188, 260 S.W.2d 496, 500 [2], is not applicable.

## HYDE, Judge.

I respectfully dissent because I do not believe we should hold Instruction No. 6 to be reversibly erroneous. If the trial court had granted a new trial on the ground that this instruction was not clear or misleading, I would affirm such an order. However, I do not think this instruction is a misdirection, and if merely ambiguous it falls within the principle stated in Hooper v. Conrad, 364 Mo. 176, 189, 260 S.W.2d 496, 501, "that if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction."